UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

- - - - - - - - - - - - - - - - - - -X

JEREMIAH SULLIVAN in his fiduciary
capacity as a Trustee for the
Pointers, Cleaners & Caulkers Welfare,
Pension & Annuity Funds, the                    REPORT AND
Bricklayers Joint Apprentice Training           RECOMMENDATION
Fund, the Labor Management Fund and
the Promotion Fund and as President of          CV 2012-2825 (NGG)(MDG)
the Bricklayers and Allied
Craftworkers Local Union No. 1,
B.A.C.I.U., AFL-CIO and the TRUSTEES
of the Bricklayers and Trowel Trades
International Pension Fund and the
International Masonry Institute,

                        Plaintiff,

        - against -

A & Z CONSTRUCTION CO. and ARSHAD
HUSSAIN,

                        Defendants.

- - - - - - - - - - - - - - - - - - -X

        Plaintiffs Jeremiah Sullivan, as Trustee for the Pointers,

Cleaners & Caulkers Welfare, Pension & Annuity Funds, the

Bricklayers Joint Apprentice Training Fund (collectively the "PCC

Funds"), the Labor Management Fund and the Promotion Fund (the

"non-ERISA Plans") and President of the Bricklayers and Allied

Craftworkers Local Union No. 1, B.A.C.I.U., AFL-CIO ("Local 1"),

and the Trustees of the Bricklayers and Trowel Trades

International Pension Fund ("IPF") and the International Masonry

Institute ("IMI") (collectively "International Funds") (PCC Funds

and International Funds altogether "the Funds"), bring this

action pursuant to the Employee Retirement Income Security Act ("ERISA"), 29 U.S.C. § 1001 et seq., the Labor Management Relations Act ("LMRA"), 29 U.S.C. § 185, et seq. and common law to recover unpaid contributions, dues and assessments owed by defendants A&Z Construction Company and Arshad Hussain. The Honorable Nicholas G. Garaufis referred to me to report and recommend on the amount of damages and attorneys' fees against defendants sought by plaintiff in his motion for default judgment.

<u>BACKGROUND</u>

The facts pertinent to this decision are undisputed and are set forth in plaintiff's complaint ("Compl.") (ct. doc. 1) and the affidavits of plaintiffs' attorney, Carol G. Dell, dated August 27, 2012 ("Dell Aff.") (ct. doc. 11), plaintiff Jeremiah Sullivan dated August 21, 2012 ("Sullivan Aff.") (ct. doc. 9) and accountant Michael Gold dated August 23, 2012 ("Gold Aff.") (ct. doc. 10). Attached to these affidavits are the relevant collective bargaining agreements, Local 1's pay schedule, audit reports prepared by Kobgo Associates and attorney time sheets.

The Funds are jointly trusteed, multi-employer employee benefit plans established to receive fringe benefit contributions and dues and assessments for Local 1 in accordance with collective bargaining agreements to which employers are parties. See Compl. ¶¶ 4-9. The PCC Funds also collect contributions due

to the non-ERISA Plans.  Id. ¶ 6.  The IPF is authorized to make collections on behalf of the IMI pursuant to a written assignment of claims and the Collection Procedures of the Central Collection Unit of the Bricklayers and Allied Craftworkers.  Id. ¶ 8.  A&Z Construction is an employer as defined by ERISA, 29 U.S.C. §§ 1002(5), 1145, and employs members of the Union.  Compl. ¶¶ 20, 22.

Defendant Hussain executed a Collective Bargaining Memorandum of Agreement ("MOA") between Local 1 and the Building Restoration Contractors Association ("BCRA") on June 24, 2004 in his personal capacity and on behalf of A&Z Construction.  See Compl. ¶¶ 19-20, 26; Sullivan Aff. (ct. doc. 9) Ex. C ("MOA"), at 3.  Accordingly, A&Z agreed to be bound to the terms of the collective bargaining agreement between Local 1 and the Building Restoration Contractors Association in effect from July 1, 2004 through June 30, 2008.  See Sullivan Aff., Exh. A ("2004 CBA").

Since January 1, 2009, A&Z has failed to make timely payments to the Funds in accordance with the collective bargaining agreement in violation of its obligations.  Compl. ¶ 44.  Mr. Gold, a Certified Public Accountant, of Kobgo Associates, Inc. ("Kobgo"), conducted an audit of A & Z Construction for the period of January 1, 2009 through March 31, 2011.  Gold Aff. at ¶¶ 1, 5.  Kobgo issued an initial report in January 2012, which was revised twice after Mr. Gold received written objections from A & Z and after discovering additional

payments made.  Id. at ¶¶ 8-13.  Kobgo issued a revised corrected

audit report on Aug. 14, 2012 which is further explained by Mr.

Gold in his affidavit.  Id. at ¶¶ 13-17.

After review of the submissions, I have corrected

plaintiffs' calculations for unpaid contributions, as discussed

in greater detail below.

DISCUSSION

I.  <u>Default Judgment Standard</u>

A default constitutes an admission of all well-pleaded

factual allegations in the complaint, except for those relating

to damages.  <u>Greyhound Exhibitgroup, Inc. v. E.L.U.L. Realty

Corp.</u>, 973 F.2d 155, 158 (2d Cir. 1992); <u>Au Bon Pain Corp. v.

Artect, Inc.</u>, 653 F.2d 61, 65 (2d Cir. 1981); <u>see</u> <u>also</u> <u>City of

N.Y. v. Mickalis Pawn Shop, LLC</u>, 645 F.3d 114, 137 (2d Cir.

2011).  A default also effectively constitutes an admission that

damages were proximately caused by the defaulting party's

conduct; that is, the acts pleaded in a complaint violated the

laws upon which a claim is based and caused injuries as alleged.

<u>Greyhound</u>, 973 F.2d at 159.  The movant need prove "only that the

compensation sought relate to the damages that naturally flow

from the injuries pleaded."  <u>Id.</u>

The court must ensure that there is a reasonable basis for

the damages specified in a default judgment.  Actual damages or

statutory damages may be assessed.  In determining damages not

susceptible to simple mathematical calculation, Fed. R. Civ. P.

-4-

55(b)(2) gives a court the discretion to determine whether an evidentiary hearing is necessary or whether to rely on detailed affidavits or documentary evidence. <u>Action S.A. v. Marc Rich & Co., Inc.</u>, 951 F.2d 504, 508 (2d Cir. 1991) (quoting <u>Fustok v. ContiCommodity Servs., Inc.</u>, 873 F.2d 38, 40 (2d Cir. 1989)). The moving party is entitled to all reasonable inferences from the evidence it offers. <u>Finkel v. Romanowicz</u>, 577 F.3d 79, 84 (2d Cir. 2009); <u>Au Bon Pain</u>, 653 F.2d at 65 (citing <u>Trans World Airlines, Inc. v. Hughes</u>, 308 F. Supp. 679, 683 (S.D.N.Y. 1969)).

II. <u>Liability</u>

As an employer within the meaning of ERISA and signatory to the MOA, A&Z Construction was obligated to pay monthly contributions, dues and assessments under the 2004 CBA. By signing the MOA, A&Z Construction agreed to the terms of the 2004 CBA. <u>See</u> Compl. ¶ 20; MOA, at 1. The 2004 CBA provides that it remains in effect unless terminated upon written notification sent at least 60 days prior to the expiration date. <u>See</u> Compl. ¶ 21; 2004 CBA, Art. XXIX. Plaintiff fails to allege that defendant did not send written notification of its intention to terminate. Nevertheless, an employer may be found to have agreed to the terms of an unsigned or expired CBA through a course of conduct indicative of an intent to bound by its terms. <u>See</u> <u>Brown v. C. Volante Corp.</u>, 194 F.3d 351, 354-46 (2d Cir. 1999). After expiration of the 2004 CBA, A&Z continued to employ

-5-

Local 1 members, made contribution payments in January 2011 and May 2011 at the rates set forth in the 2008 CBA, remitted monthly reports to the Funds between September 2010 and April 2011 and submitted to an audit. See Compl. ¶¶ 22-24. The remittance reports submitted by defendant between September 2010 and April 2011 contain the provision that "[b]y submitting this report the Employer agrees: 1) that the Employer is a party to a collective bargaining agreement with [Local 1]." Sullivan Aff., Exh. D. Therefore, defendant continued to be obligated to make contributions and became bound to the terms of the 2008 CBA by its course of conduct. See New England Health Care Employees Welfare Fund v iCARE Mgmt., LLC, 886 F. Supp. 2d 82, 98-100 (D. Conn. 2012); Empire State Carpenters Welfare Annuity v. Conway Const. of Ithaca, Inc., 2010 WL 625352, at *6-*8 (E.D.N.Y. 2010); Trustees of Local 1034 I.B.T. Ins. Trust Fund v. Menna Container & Drum, Inc., 2010 WL 890981, at *3 (E.D.N.Y. 2010); Labarbera v. Ingoe Rock Indus., Inc., 2006 WL 2829006, at *2 (E.D.N.Y. 2006).

Section 515 of ERISA requires "[e]very employer who is obligated to make contributions to a multiemployer plan under the terms of a plan or under the terms of a collectively bargained agreement . . . [to] make such contributions in accordance with the terms and conditions of such plan or such agreement." 29 U.S.C. § 1145. Since A&Z Construction undisputedly failed to pay contributions for the period from January 1, 2009 to March 31,

2011, A&Z is liable to plaintiffs under ERISA and for breach of the 2008 CBA.

Section 301(a) of the LMRA provides that "[s]uits for violation of contracts between an employer and a labor organization representing employees in an industry affecting commerce . . . may be brought in any district court of the United States having jurisdiction of the parties." 29 U.S.C. § 185(a). Under section 301, an employer may be held liable for failing to remit dues withheld from employee paychecks to the union as required by a collective bargaining agreement. See Sullivan v. Marble Unique Corp., 2011 WL 5401987, at *3 (E.D.N.Y. 2011); Trustees of the Plumbers Local Union No.1 Welfare Fund v. Philip Gen. Constr., 2007 WL 3124612, at *4 (E.D.N.Y. 2007).

It is undisputed that A&Z Construction did not pay certain contributions and dues check-offs that were due during the audit period. Thus, defendant is liable to the Funds and the Union under ERISA and the LMRA.

As to the individual defendant, plaintiffs contend that Mr. Hussain is personally liable in his individual capacity for unpaid contributions because he signed the MOA. Although federal law governs disputes arising under section 301 of the LMRA, state law applies to whether a collective bargaining agreement imposes personal liability on the signatory. See Mason Tenders Dist. Council Welfare Fund, 301 F.3d 50, 53 (2d Cir. 2002). "'Under New York law, an agent who signs an agreement on behalf of a

disclosed principal will not be individually bound to the terms of the agreement unless there is clear and explicit evidence of the agent's intention to substitute or superadd his personal liability for, or to, that of his principal.'" Cement and Concrete Workers District Council Welfare Fund v. Lollo, 35 F.3d 29, 35 (2d Cir. 1994) (quoting Lerner v. Amalgamated Clothing & Textile Workers Union, 938 F.2d 2, 5 (2d Cir. 1991)).  The factors to be considered in determining the signatory's intent include "the length of the contract, the location of the liability provision(s) in relation to the signature line, the presence of the signatory's name in the agreement itself, the nature of the negotiations leading to the contract, and the signatory's role in the corporation." Id.  The New York Court of Appeals has observed that "'where individual responsibility is demanded the nearly universal practice is that the officers signs twice - once as an officer and again as an individual.'" Mason Tenders, 301 F.3d at 54 (quoting Salzman Sign Co. v. Beck, 10 N.Y.2d 63, 67 (1961)).

A long contract could be a "trap for an unwary signatory." Lerner, 938 F.2d at 5.  Here, although the MOA is only 3 pages long, it incorporates the terms of the CBA which is 60 pages long.  Thus, this factor slightly weighs against a finding of personal liability.

A personal liability provision that "is prominently displayed immediately above the signature line" weighs in favor

of finding personal liability.  See Lollo, 45 F.3d at 35.  Here,
the liability provision is located on the same page and directly
above the signature line.  In Lollo, the Second Circuit found
that the language of an identical liability clause to the one at
issue here "unequivocally fixes personal liability on the
signatory."  Id.  Accordingly, this factor weighs in favor of
finding Mr. Hussain personally liable.

Although Mr. Hussain's name does not appear in the CBA or
the text of the MOA, he handwrote his name above his signature.
This factors weighs slightly in favor of personal liability.  See
Marble Unique, 2011 WL 5401987, at *9.

Plaintiffs have not provided any evidence regarding the
nature of the negotiations leading up to the execution of the
MOA.  Their failure to do so weighs against a finding of personal
liability.  See id.; Philip Gen. Constr., 2007 WL 3124612, at *7.

Plaintiffs allege in the complaint that Mr. Hussain is an
officer of A & Z.  Compl. at ¶ 14.  Mr. Hussain's signature
appears on the remittance reports submitted to the Funds by A&Z
above the title "President."  See Sullivan Aff., Exh. D.  Checks
that were used to remit contributions on behalf of A &Z were also
signed by Mr. Hussain and drawn from an account in the name of
"Arshad Hussain dba A & Z Construction Co[.]"  Id., Exh. E.
While Mr. Hussein's title as president of the company is a
neutral factor, the fact that he submitted checks to the Funds

drawn on an account in his name doing business as A&Z weighs in favor of liability.

Finally, Mr. Hussain signed the MOA twice, once in his official capacity and once in his personal capacity. He signed once after the word "By" and under where he handwrote the "Name of the Employer" as "A & Z Construction Co." He signed again underneath where he had printed his name. He also provided his social security number a few lines below his signature. This factor strongly weighs in favor of finding that Mr. Hussain is personally liable for A & Z's failure to pay contributions.

Upon considering the factors discussed above, I find that there is "overwhelming evidence of the signatory's intention to assume personal liability." Thomsen Constr., 301 F.3d at 53. Accordingly, I recommend finding Mr. Hussain liable to plaintiffs under ERISA and the LMRA.


III. Damages

Section 502(g)(2)(B) of ERISA provides that a fiduciary seeking to enforce provisions of an employee benefit plan is entitled to recover:

> (A) the unpaid contributions; (B) interest on the unpaid contributions; (C) an amount equal to the greater of -- (i) interest on the unpaid contributions, or (ii) liquidated damages provided for under the plan not in excess of 20 percent . . . of the [unpaid contributions]; (D) reasonable attorney's fees and costs of the action; (E) such other legal or equitable relief as the court deems appropriate.

29 U.S.C. § 1132(g)(2)

Plaintiffs seek to collect unpaid monies owed by A&Z Construction to the Funds pursuant to the 2008 CBA for the period from January 1, 2009 to March 31, 2011 based on an audit of A&Z Construction's books and records.  "[T]he opinion of an auditor is a sufficient basis for an award of a specific amount of damages," if it is adequately explained and credited by the court."  <u>Philip Gen. Constr.</u>, 2007 WL 3124612, at *10. Plaintiffs claim that they are entitled to the amount of $19,864.78 for unpaid contributions,[1] $1,723.06 in dues and assessments, $5,420.45 in interest on the contributions through August 15, 2012, $411.40 in prejudgment interest on the dues and assessments through August 15, 2012, $3,972.96 as liquidated damages in the amount of 20 percent of unpaid contributions, $5,935.00 in attorneys' fees, $521.70 in costs and $2,080.00 in audit costs.  Sullivan Aff. ¶ 27; Gold Aff. ¶ 13 and Exh. I; Dell Aff. ¶¶ 40-42, 44, 45 and Exh. T.

A.  <u>Unpaid Contributions, Dues and Assessments</u>

Arguably, the CBA does not require an employer to make contributions and pay dues and assessments to each entity for which damages are sought.  Article XV, Section 1 of the CBA requires an employer to pay contributions to the Welfare Fund, Pension Fund and Annuity Fund.  In a section titled "Check-off

---

[1] In Mr. Gold's report, he combines the unpaid contributions and dues and assessments amounts for a total of $21,587.86.  The $.02 difference between counsel's total amount for these items and Mr. Gold's total appears to be a rounding difference.

and Political Action Committees, Article XIV, Section 1 requires an employer to deduct dues check-offs from the wages of each employee who has authorized the deduction of working dues check-offs, including to the international union. Article XVI requires an employer to make contributions to the Industry Promotion Fund. The CBA does not, however, explicitly require contributions, dues and assessments to be paid for the other Funds. On the other hand, Article XIII, Section 12 sets forth the wage and fringe benefit contribution rates for the various funds for which damages are sought. Section 12 states "[w]age rates and fringe benefit contributions for Employees within the bargaining unit shall be: . . . ." Drawing all reasonable inferences in plaintiffs' favor, I construe the CBA to require contributions to be paid and dues and assessments to be deducted from wages from the entities listed in Article XIII. But see Lanzafame v. Dana Restoration, 2011 WL (E.D.N.Y. 2011) (adopting recommendation to limit damages to contributions to those fringe benefit funds listed in Article XV and dues to the Union).

The Court notes that included in plaintiffs' calculation of damages are monies owed for work of persons described as "Independent Contractors." See Gold Aff. ¶¶ 14, 17; Damages Schedules (Gold Aff., Exh. I), at 3. Although plaintiff does not proffer an explanation, a survey of the damage schedules and employer reports remitted by defendants reveals that most of the names that appear as "independent contractors" are elsewhere

listed (and presumably paid) as union journeymen mechanics.
However, four of the "independent contractors" do not appear in
any other documents submitted by plaintiffs: Muhammad Ayub,
Mohammed Riasat, Akhter Waheed and Christopher Ironside.  Lacking
a satisfactory explanation as to whether these individuals are
members of the union or performed covered work and why the
defendant should pay the Funds contributions and dues and
assessments for their work, I recommend denying plaintiffs for
contributions for the hours worked by these individuals.
Plaintiffs fail to provide any evidence that the CBA requires
defendant to make contributions for these "independent
contractors."  See, e.g., Gesualdi v. Laws Constr. Corp., 485
Fed. Appx. 450, at 452 (2d Cir. 2012) (vacating summary judgment
in favor of Funds because "the CBA does not clearly and
unambiguously obligate [defendant] to contribute to the Funds for
the hours worked by [non-party corporation] employees");
Wojciechowski v. Boening Bros., Inc., 2012 WL 912968, at *5
(E.D.N.Y. 2012) (declining to order defendant to produce
disbursement journals for individuals who are not union members
because "plaintiffs have proffered no evidence to show that a
review of the disbursements journals would help them identify
employees for whom [defendant] was required to make Fund
contributions"); but see King v. Audax Constr. Corp., 2007 WL
2852103, at *7-*8 (rejecting defendant's argument that it should
not be liable for union contributions for third-party employees

because there is no basis for such liability, reasoning that defendant "asks this court to relieve it from liability on grounds that it does not have the information to calculate its liability, yet this liability stems largely from [defendant]'s own failure to fulfill its obligation under the CBA to track and supply such information").

Plaintiffs' submissions adequately demonstrate the basis for collection of unpaid contributions and dues and assessments as to the remaining employees.  Therefore, the Court accepts plaintiffs' calculations regarding the other "Independent Contractors."  See Damages Schedules.  When the hours for Mr. Raisat, Mr. Waheed, Mr. Ayub and Mr. Ironside are subtracted from the "Independent Contractor" hours, the number of hours worked by "Independent Contractors" in the January 1, 2009 through June 30, 2009 period is reduced to 124.92 hours, and the number of hours of unpaid contributions in the July 1, 2009 through December 31, 2009 period decreases to 221.69 hours.  The total number of unpaid contributions for the independent contractors is thereby reduced to $6,540.42 for all contributions, dues and assessments for the audit period.

The remaining calculations of unpaid contributions, dues and assessments are correct.  Accordingly, I recommend that the Court award plaintiffs $18,105.38 in unpaid contributions, dues and assessments as follows:

| Fund | Amount Due |
|------|-----------|
| Welfare | $ 4,523.23 |
| Pension | $ 5,725.55 |
| Annuity | $ 4,391.77 |
| Defense | $   125.59 |
| Promotion | $    88.66 |
| BAC PAC | $    15.02 |
| J.A.T. | $    36.94 |
| Dues Check Off | $   572.99 |
| Labor Management | $   147.75 |
| IPF PPA Special Assessment | $   109.23 |
| IMI | $   778.01 |
| International Pension | $   824.09 |
| International BAC PAC | $    54.94 |
| International Dues Check Off | $   711.61 |
| TOTAL | $18,105.38 |

B.    <u>Interest and Liquidated Damages</u>

Plaintiffs seek interest at the rate of 10 percent per annum on unpaid fringe benefit contributions and 9 percent per annum on all unpaid dues and assessments.  <u>See</u> Dell Aff. ¶¶ 41, 45.  The amount of interest due for unpaid contributions under ERISA must be "determined by using the rate provided under the plan, or if none, the rate prescribed under section 6621 of title 26."  29 U.S.C. § 1132(g)(2)(B).  The CBA provides for payment of 10 percent interest on certain unpaid fringe benefits.  <u>See</u> 2008 CBA Art. XV § 7(f).  The applicable CBA does not provide for interest for the failure to pay union dues.  Moreover, since the failure

to pay dues is covered by the LMRA rather than ERISA, the award of pre-judgment interest on unpaid dues checkoffs is within the Court's discretion.  See Cruz v. Local Union No. 3 of Int'l Broth. of Elec. Workers, 34 F.3d 1148, 1161 (2d Cir. 1994); Arch Ins. Co. v. DCM Group LLC, 2012 WL 3887098, at *7 (E.D.N.Y. 2012) (recommending against award of interest on delinquent dues). Since the Union's request is undisputed, I recommend awarding interest at 9 percent per annum, the statutory rate under New York law.  See Sullivan v. Marble Unique Corp., 2011 WL 5401987, at *7 (E.D.N.Y. 2011) (awarding interest for unpaid union dues at New York statutory rate); Trustees of Mason Tenders Dist. Council v. Multi Recycling Corp., 2005 WL 3446042, at *5 (S.D.N.Y. 2005); N.Y. C.P.L.R. § 5004.  Therefore, I recommend that plaintiffs receive both categories of interest.

Plaintiffs do not characterize the various contributions as fringe benefits or dues and assessments.  Since under the 2008 CBA, Article XV entitled "Fringe Benefit Funds" refers to the Pointers, Cleaners and Caulkers Welfare Fund, Pension Fund and Annuity Fund, and the Industry Promotion Fund is covered by Article XVI, which incorporates the collection procedures of Article XV, this Court will apply the 10 percent interest rate to the unpaid contributions to these Funds.  As to the other funds that are alleged in the complaint to be covered under ERISA, the International Pension Fund, International Masonry Institute and the Joint Apprentice Training Fund, I recommend applying the rate

specified under ERISA according to 26 U.S.C. § 6621.  See 29

U.S.C.A. § 1132(g).  Although the applicable rate fluctuated

during the relevant time period between 3 percent and 4 percent,

I apply a uniform 3 percent rate as the difference would be de

minimis given the amount of unpaid principal at issue.  The

remaining funds will be treated as dues and assessments, and most

are in fact identified in the 2008 CBA as being payments to be

deducted from wages, and paid directly either to the Union or

directly to the Bricklayers and Allied Craftworkers

International.  The General Collection Procedures provides that

payments are due on the 15th day of the month following the month

for which contributions are due for the International Union,

International Pension Fund, IMI and BACPAC.  See General

Collections Procedures (Sullivan Aff., Ex. G), at 1.  I will

apply that due date to all unpaid contributions, dues and

assessments in the absence of a specific provision as to the

other Funds.  For those unpaid amounts related to a particular

project for which contributions were not paid for more than one

month, I calculate interest from the 15th day of the month

following the end of that period.  Accordingly, I recommend

awarding interest through March 31, 2016 in the amount of

$10,543.75 and at a daily rate of $4.59 thereafter until the

entry of judgment.

| Time Period (Project) | Accrual Date | Amount Unpaid | Days | Int. Rate | Per Diem | Int. Due |
|---|---|---|---|---|---|---|
| 10/09 (PS 29) | 11/15/09 | $ 630.72 | 2329 | 10% | .17 | $ 395.93 |
| | | $ 1.60 | 2329 | 3% | <.01 | $ 0.30 |
| | | $ 36.48 | 2329 | 9% | .01 | $ 20.95 |
| 11/09 (Health Prof.) | 12/15/09 | $ 8,041.68 | 2298 | 10% | 2.20 | $5,062.95 |
| | | $ 867.20 | 2298 | 3% | .07 | $ 163.79 |
| | | $ 926.48 | 2298 | 9% | .23 | $ 524.97 |
| 9/10-12/10 (PS 205) | 1/15/11 | $ 488.88 | 1902 | 10% | .13 | $ 254.75 |
| | | $ 349.20 | 1902 | 3% | .03 | $ 54.59 |
| | | $ 222.72 | 1902 | 9% | .05 | $ 104.45 |
| 1/1/09–6/30/09 (Indep. Contr.) | 7/15/09 | $ 2,079.53 | 2451 | 10% | .57 | $1,396.41 |
| | | $ 159.69 | 2451 | 3% | .01 | $ 32.17 |
| | | $ 196.36 | 2451 | 9% | .05 | $ 118.67 |
| 7/1/09–12/31/09 (Indep. Contr.) | 1/15/10 | $ 3,488.40 | 2267 | 10% | .96 | $2,166.63 |
| | | $ 261.35 | 2267 | 3% | .02 | $ 48.70 |
| | | $ 355.09 | 2267 | 9% | .09 | $ 198.49 |
| TOTAL | | $18,105.38 | | | | $10,543.75 |

Plaintiffs also request liquidated damages of 20 percent of the unpaid fringe benefits owed to the Pointers, Cleaners and Caulkers Welfare Fund, Pension Fund, Annuity Fund, Joint Apprentice Training Fund, Promotion Fund, Labor Management Fund,

International Pension Fund, International Masonry Institute and IPF PPA Special Assessment.

ERISA provides for plaintiff to collect an amount "equal to the greater of –- (i) interest on the unpaid contributions, or (ii) liquidated damages provided for under the plan not in excess of 20 percent . . . of the [unpaid contributions]." 29 U.S.C. § 1132(g)(2). Article XV, Section 7(f) of the 2008 CBA provides for liquidated damages of 20 percent where both an audit and litigation were used to collect nonpayment. However, as discussed above, Article VX pertains only to the Welfare Fund, Pension Fund, Annuity Fund and Promotion Fund. Nevertheless, as to the other funds that are alleged in the complaint to be covered under ERISA, the International Pension Fund, International Masonry Institute and the Joint Apprentice Training Fund, I recommend also awarding liquidated damages.

Accordingly, I recommend that the Court award plaintiffs liquidated damages in the amount of $3,273.65 as follows:

| Fund | Principal | Liquidated Damages |
|------|-----------|--------------------|
| Welfare | $ 4,523.23 | $ 904.65 |
| Pension | $ 5,725.55 | $ 1,145.11 |
| Annuity | $ 4,391.77 | $ 878.35 |
| Promotion | $ 88.66 | $ 17.73 |
| International Pension Fund | $ 824.09 | $ 164.82 |
| International Masonry Institute | $ 778.01 | $ 155.60 |
| Joint Apprentice Training Fund | $ 36.94 | $ 7.39 |
| | | $ 3,273.65 |

D.  Attorneys' Fees

    The Funds are also entitled to reasonable attorneys' fees
and costs.  29 U.S.C. § 1132(g)(2)(D).  The award of attorneys'
fees is mandatory.  See Labarbera v. Clestra Hauserman, Inc., 369
F.3d 224, 226 (2d Cir. 2004).

    The standard method for determining the amount of reasonable
attorneys' fees is the lodestar method, which is based on "the
number of hours reasonably expended on the litigation multiplied
by a reasonable hourly rate."  Hensley v. Eckerhart, 461 U.S.
424, 433 (1983); Arbor Hill Concerned Citizens Neighborhood
Ass'n, 522 F.3d 182, 184, 188-90 (2d Cir. 2008) (preferring the
term "presumptively reasonable fee" but upholding the lodestar
formula).  Both the Second Circuit and the Supreme Court have
held that the lodestar figure creates a "presumptively reasonable
fee," though it is not "conclusive in all circumstances."  Millea
v. Metro-N. R.R. Co., 658 F.3d 154, 166 (2d Cir. 2011) (citing
Perdue v. Kenny A. ex rel. Winn, 559 U.S. 542, 552 (2010)).
However, "that presumption may be overcome in those rare
circumstances in which the lodestar does not adequately take into
account a factor that may properly be considered in determining a
reasonable fee."  Perdue, 542 U.S. at 554.

    In reviewing a fee application, the court "must examine the
particular hours expended by counsel" with a view to "the value
of the work product of the particular expenditures to the
client's case."  DiFilippo v. Morizio, 759 F.2d 231, 235 (2d Cir.
1985); see also Lunday v. City of Albany, 42 F.3d 131, 133 (2d

Cir. 1994); <u>Adorno v. Port Auth. of New York and New Jersey</u>, 685 F. Supp. 2d 507, 515 (S.D.N.Y. 2010) (analyzing the merits, success and ultimate contribution to litigant's case of various billing entries).  If any expenditure of time was unreasonable, the Court should exclude these hours from the calculation.  <u>See</u> <u>Hensley</u>, 461 U.S. at 434; <u>Lunday</u>, 42 F.3d at 133.  The Court should thus exclude "excessive, redundant or otherwise unnecessary hours, as well as hours dedicated to severable unsuccessful claims."  <u>Quaratino v. Tiffany & Co.</u>, 166 F.3d 422, 425 (2d Cir.1999).  A party seeking attorneys' fees bears the burden of supporting its claim of hours expended by accurate, detailed and contemporaneous time records.  <u>New York State Ass'n</u> <u>for Retarded Children, Inc. v. Carey</u>, 711 F.2d 1136, 1147–48 (2d Cir. 1983); <u>see</u> <u>also</u> <u>Saunders v. City of New York</u>, 2009 WL 4729948, *5 (S.D.N.Y. 2009).

A reasonable hourly rate is "the rate a paying client would be willing to pay," bearing "in mind that a reasonable, paying client wishes to spend the minimum necessary to litigate the case effectively."  <u>Arbor Hill</u>, 522 F.3d at 190; <u>see</u> <u>also</u> <u>Simmons v.</u> <u>N.Y.C. Transit Auth.</u>, 575 F.3d 170, 174 (2d Cir. 2009).  The rates awarded should reflect counsel's experience as well as "the nature of representation and type of work involved in a case."  <u>See</u> <u>Arbor Hill</u>, 522 F.3d at 184.  Reasonable hourly rates are determined by examining the "rates prevailing in the community for similar services of lawyers of reasonably comparable skill, experience, and reputation."  <u>Cruz v. Local Union No. 3 of</u>

I.B.E.W., 34 F.3d 1148, 1159 (2d Cir. 1994) (citing Blum v. Stenson, 465 U.S. 886, 894 (1984)).  Determination of the prevailing market rates may be based on evidence presented or a judge's own knowledge of hourly rates charged in the community. Chambless, 885 F.2d at 1059.  The "community" is generally considered the district where the district court sits.  See Arbor Hill, 522 F.3d at 190-91.

Plaintiffs request $5,835.00 in attorneys' fees based on 34.3 hours of work.  See Billing Records (Dell Aff. Ex. U), at 1. Although the number of hours claimed is somewhat higher than similar default actions, see Cement and Concrete Workers District Council v. Integrated Structures Corp., 2012 WL 4364499, at *5 (E.D.N.Y. 2012) (finding 8 hours reasonable and citing cases approving 10-18 hours claimed), I find the number of hours claimed reasonable, particularly in light of the revisions to the audit report, which required additional communications with the auditing firm and revising of the complaint.  See, e.g., I.B.E.W. Local 910 Welfare, Annuity and Pension Funds v. Grayco Electric, Inc., 2013 WL 495638, at *4 (N.D.N.Y. 2013) (approving request for 23.25 hours); Finkel v. Rico Elec., Inc., 2012 WL 6569779, at *16 (E.D.N.Y. 2012) (approving request for 31.6 hours of work).

Plaintiffs request rates of $240 per hour for Carol Dell and Vincent O'Hara, $175 per hour for Nikila Dasarathy and $85 per hour for Jia Shi and Thomas Carey.  See Billing Records.  Ms. Dell was admitted to practice in New York in 2001 and has specialized in ERISA litigation since that time.  Dell Aff. ¶ 50.

Mr. O'Hara was admitted to practice in New York in 1981 and is a founding member of the law firm Holm & O'Hara. <u>Id.</u> ¶ 51. He has specialized in ERISA matters for over 30 years. <u>Id.</u> Nikila Desarathy is an associate who was admitted in New York in 2010. <u>Id.</u> ¶ 51. Thomas Carey and Jia Shi are paralagels. <u>Id.</u> ¶ 53. All of these rates are within the range approved for ERISA default actions by courts in this district. <u>See</u>, <u>e.g.</u>, <u>Ferrara v. Reliable Indus. II,</u>, 2012 WL 6851088 (E.D.N.Y. 2012) at *6 ("[a]ttorneys' rates in other ERISA default cases in the E.D.N.Y. have ranged between $275-$390 for partners and $100-$280 for associates"); <u>Empire State Carpenters Funds v. Creative Installations, Inc.</u>, 2012 WL 4482815, at *7 (E.D.N.Y. 2012) (rates of $250-$345 per hour for attorneys and $75-$140 per hour for paralegals "are reasonable rates within this District"). However, Ms. Dell states in her affidavit that the firm and the client agreed on rates of $225 per hour for partners, $165 for associates with less than 3 years of experience and $85 for paralegals. Dell Aff. ¶ 53. Because these rates represent the amount that the client is willing to pay, I recommend that the attorneys be compensated in accordance with this agreement for a total attorney fee award of $5,537.50.

In addition, plaintiffs have requested reimbursement of costs and disbursements amounting to $521.70,[2] including the court filing fee of $350, $40 for service of process, $116.80 for

---

[2] Ms. Dell also states in her affidavit that plaintiffs incurred $624.06 in costs, but the documents attached support only $521.70.

photocopying and $14.90 for travel, postage and a fax.  Dell Aff.

¶ 56; Costs Records (Dell Aff. Exh. V).  Awardable costs include

"those reasonable out-of-pocket expenses incurred by attorneys

and ordinarily charged to their clients."  LeBlanc-Sternberg v.

Fletcher, 143 F.3d 748, 763 (2d Cir. 1998) (quoting United States

Football League v. Nat'l Football League, 887 F.2d 408, 416 (2d

Cir. 1989)).  Compensable costs include but are not limited to

copies, telephone charges, and postage.  Id.

Accordingly, I recommend that the plaintiffs be awarded

$521.70 in costs.

E.    Audit Fees

Plaintiffs also request an award of $2,080.00 for audits

performed on the payroll records of defendant.  Dell Aff. ¶ 57.

Although section 1132(g)(2) does not expressly provide for an

award of audit fees, since that section provides for "such other

legal or equitable relief as the court deems appropriate," it has

been used by some courts as a basis for awarding plaintiffs audit

costs.  See, e.g., Grayco Electric, 2013 495638, at *2 ("ERISA

authorizes plaintiffs to enforce an employer's obligations to

remit contributions . . . and collect . . . audit fees");

Creative Installations, 2012 WL 4482815, at *8 ("[a]udit costs

are routinely recoverable in ERISA actions") (citing cases).

Here, the 2008 CBA provides that an employer who is found upon

regular audit to be "substantially delinquent" in payments to the

Funds "may be charged the full cost of such audit."  2008 CBA,

Art. XV § 7(k).

However, requests for audit fees must be supported by "records . . . sufficient to allow the court to determine the reasonableness of the audit costs." <u>Kay-R Elec.</u>, 2011 WL 2976266, at *5; <u>Andrews Trucking</u>, 2010 WL 2301028, at *7. Determination of reasonable audit fees are governed by "the same standards the court applies in awarding attorneys' fees." <u>Trustees of Plumbers Local Union No. 1 Welfare Fund v. Axiom Plumbing & Heating Corp.</u>, 2009 WL 2461738, at *5 (E.D.N.Y. 2009); <u>Teamsters Local 814 Welfare Fund v. Dahill Moving & Storage Co., Inc.</u>, 545 F. Supp. 2d 260, 269 (E.D.N.Y. 2008). "Accordingly, the evidence supporting an audit fee request under 29 U.S.C. § 1132(g)(2)(E) must include, at minimum, some breakdown of the auditors' rates charged and hours expended." <u>Axiom Plumbing</u>, 2009 WL 2461738, at *5; <u>Masino v. Tucci Equip. Rental</u>, 2008 WL 5451005, at *2 (E.D.N.Y. 2008).

Here, the only documentation submitted by plaintiffs in support is a copy of the invoice from plaintiffs' auditing firm which shows auditing costs in the amount requested. The invoice does not include any information as to the rates charged by the auditors or the time they spent conducting the audit. Absent such explanation, the court cannot determine whether the amount requested is reasonable. See <u>Axiom Plumbing</u>, 2009 WL 2461738, at *5 (denying audit fees for failure to submit necessary information); <u>Cruz v. U.S. Health Clean</u>, 2009 WL 1562749, at *7 (S.D.N.Y. 2009) (same); <u>Tucci Equip.</u>, 2008 WL 5451005, at *1 (same); <u>Trustees of the Plumbers Local Union No. 1 Welfare Fund</u>

v. Philip General Constr., 2007 WL 3124612, at *14 (E.D.N.Y. 2007) (same). On the other hand, some work was clearly conducted by the auditors and it would be unfair to entirely deny plaintiffs the costs of the audit. "Where calculation of unpaid contributions during an audit appears particularly complicated or time-consuming, a higher award of audit costs is justified." Empire State Carpenters Welfare, Pension, Annuity, Apprenticeship, Charitable Trust, Labor Mgmt. Cooperation and Scholarship Funds v. Creative Installations, Inc., 2012 WL 4482815, at *8 (E.D.N.Y. 2012). Therefore, I recommend awarding plaintiffs $2,080 in audit costs notwithstanding the insufficient information provided. This recognizes that a substantial amount of work was required to conduct the audit and respond to defendant's objections to the auditor's findings.

CONCLUSION

For the foregoing reasons, I recommend that the Court award plaintiffs judgment against defendants in the amount of $40,061.98, consisting of $18,105.38 in unpaid contributions, $10,543.75 in interest through March 31, 2016 and at a daily rate of $4.59 thereafter until entry of judgment, $3,273.65 in liquidated damages, $5,537.50 in attorneys' fees, $521.70 in costs and $2,080.00 in audit fees.

Copies of this Report and Recommendation will be sent by mail to defendants and filed electronically on this date. Any objections to this Report and Recommendation must be filed with the Clerk of the Court, with a copy to the undersigned and to the

Honorable Nicholas G. Garaufis by March 28, 2016. Failure to file objections within the specified time waives the right to appeal. <u>See</u> 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b).

**SO ORDERED.**

Dated:      Brooklyn, New York
            March 11, 2016

                              /s/_____
                              MARILYN D. GO
                              UNITED STATES MAGISTRATE JUDGE